HOE et al. v. MIEHLE PRINTING PRESS & MFG. CO.

(Circuit Court, S. D. New York. September 28, 1905.)

1. PATENTS—INFRINGEMENT—RIGHT OF ACTION.

The fact that no machine has ever been made and shown to work successfully under a patent does not prevent the owner of the patent, if it is valid, from restraining infringement of it.

2. SAME—PRINTING PRESSES.

The Read patent, No. 688,690, for improvements in bed motions for cylinder printing machines, was not anticipated and discloses invention, but is of narrow scope and is not entitled to a broad construction of its claims to extend them beyond the actual invention described, which consists in the main of the use of a two-part bed driving wheel; the rim being mounted and movable directly upon the body of the wheel. As so limited, *held* not infringed.

In Equity. On final hearing.

Philipp, Sawyer, Rice & Kennedy (Moritz B. Philipp, and James J. Kennedy, of counsel), for complainants.

Alexander & Dowell and Munday, Evarts & Adcock (John W. Munday and Arthur E. Dowell, of counsel), for defendant.

HOLT, District Judge. This is a suit to restrain the alleged infringement of a patent, No. 688,690, issued December 10, 1901, to George F. Read, and by him assigned to the complainants, for improvements in bed motions for cylinder printing machines. The defense is a denial of invention or of infringement.

The complainants, R. Hoe & Co., are printing press manufacturers,

doing business in New York. The defendant, the Miehle Printing Press & Manufacturing Company, is a printing press manufacturer, having a place of business in New York, and its principal manufactory in Chicago. The patent relates to a form of printing press in which the bed of type is moved horizontally, forward and backward, the paper to be printed running over a cylinder above the type bed and receiving the impression while the bed is being moved forward. This form of press is principally used for particular forms of fine printing, particularly multicolor work. The bed of the presses in ordinary use must be large and heavy; the movement back and forth, in order to meet the modern demands for rapid work, must be very rapid; and, as it is essential that the paper upon which multicolor and other fine printing is done register and receive the impression very accurately, the machine must move very smoothly and without any tremble or jar. It is obvious, therefore, that an essential difficulty in the operation of these machines is to provide that, at the end of each backward and forward movement of the bed, the motion be reciprocated, that is, retarded and stopped, and then started and renewed in the opposite direction, without sudden violence or jar. This patent relates to improvements in the mechanism for reciprocating the type bed.

The machine shown and described in the Read patent has a form carrying bed mounted on ways beneath the impression cylinder, and on its underside carrying two oppositely facing racks arranged in different, but adjacent, vertical planes. A main or bed driving shaft is journaled horizontally in the frame beneath the bed and carries a bed driving wheel, which is referred to as "a compound wheel," because it has a body or hub fast on the shaft and a "toothed rim" or "ring gear" which is much narrower than the hub or body of the wheel, and is splined to the said hub or body so as to be movable thereon longitudinally of the shaft axis, but nevertheless to rotate with the shaft. The "toothed rim," when in one position on the hub, meshes with the upper of the vertical racks of the bed to drive the bed in one direction, and, when shifted on the hub to its other position, meshes with the lower rack to drive the bed in the opposite direction. The means for shifting the gear back and forth on the hub comprise a yoke embracing a groove in the toothed rim and operated by an appropriate cam. The end of the main shaft, or the hub or body referred to, carries a crank pin which has timely engagement with a part of the traveling bed when near the end of its uniform movement in either direction, and reverses such movement, starting the bed with an appropriate acceleration in an opposite direction. The parts are so combined that the toothed rim, in engagement with one of the racks, drives the bed toward the end of its traverse until the said rack becomes disengaged from the rim, whereupon the crank pin continues the movement of the bed, first slowing it down, finally stopping, and immediately reversing it. During this reversal the yoke has shifted the toothed rim on the hub so that it is ready to engage the other rack as soon as the bed starts its return stroke under the driving force of the crank pin. When this takes place, the toothed rim couples

141 F.—8

with the rack, and drives the bed with a uniform movement to the other end of its traverse, and a similar operation is repeated.

It is admitted by counsel that the claims sued upon do not involve the construction of the reversing mechanism, so long as some mechanism is provided for this purpose which is independent of the toothed rim, and that the only claims of the patent involved in the suit are claims 1, 4, 5, 6, 11, and 15. These claims are as follows:

"(1) The combination of the bed, two facing racks in different planes carried by the bed, a wheel having a rim and a body of greater thickness than said rim, the rim being adapted to move longitudinally of the axis of the wheel on said body from engagement with one of said racks to engagement with the other of said racks, and means for giving such movement to the rim, substantially as described."

"(4) The combination with the bed racks located in adjacent vertical planes, of a rotatable shaft having an enlargement on one end, a sliding gear actuating said racks, means independent of the gear for controlling the bed during the reversing operations, and means for shifting the gear from one rack to the other during such reversing operations, said gear being made in ring form and being slidingly mounted upon the enlargement of said shaft, substantially as specified."

"(5) The combination with the bed racks located in adjacent vertical planes, of a sliding ring gear, an enlargement or hub on the gear shaft on which enlargement the gear is splined, a yoke operating in a groove formed at the side of the gear, and means for operating said yoke in sliding the gear, substantially as specified.

"(6) The combination with the bed racks located in adjacent vertical planes, a sliding ring gear, an enlargement or hub on the gear shaft upon which enlargement said gear is mounted and to which it is splined, a bearing for said shaft, and means for shifting the gear, substantially as described."

"(11) The combination of a rotatable shaft having a large hub or crank disk on one end, a rack frame provided with parallel racks disposed in different planes, an annular or ring pinion slidably mounted on but rotating with said crank disk, means independent of the racks and pinion for reversing the movement of the rack frame at each end of its stroke, and means for shifting the pinion upon the disk from engagement with one rack into engagement with the other during the period of reversal."

"(15) The combination with the bed racks arranged in adjacent planes, a rotatable longitudinally-immovable shaft having a large hub on one end, a gear mounted on the said hub and sliding from one rack to the other, said gear being independent of the shaft bearing, and means for slowing and reversing the bed, substantially as described."

Most of the things mentioned in these claims are old. The two facing racks in different planes, the wheel adapted to be shifted axially from one rack to the other, and means for giving such movement to the wheel, were all shown in previous patents and known in the prior art. The only thing described in these claims which is new is having the rim of the wheel slidingly mounted upon an enlargement of the shaft constituting the main body or hub of the wheel, or, as otherwise described in the claims, having the sliding ring gear splined on or slidingly mounted on the enlargement or hub on the gear shaft. The Miehle patent of 1890, which is admittedly the nearest to the Read patent of any issued before it, has the appearance of a double wheel having a movable rim; but the rim is not mounted directly upon the rectangular member which drives it, but is mounted upon a sleeve solidly journaled to the frame of the press. The rim surrounds the rest of the driving member, but is not supported by it. The invention

of Read consisted, in my opinion, substantially in mounting the rim of the wheel directly on the hub or body of the wheel; its rotation being made uniform with the hub either by the use of splines, or by making the main body of the wheel rectangular. This construction, it is claimed, has greater simplicity and several advantages over the Miehle structure with a sleeve. An application for a patent upon this same idea was filed both by Read and by Miehle; an interference was declared between them in the Patent Office; a hearing was had; Read was decided to have been the original inventor, and the patent was accordingly issued to Read. No machine, before this suit was brought, was ever made by the complainants under the Read patent; but the defendant, after it had filed its application for a patent, and before the decision of the interference in the Patent Office, made and sold 13 machines substantially embodying the idea which Miehle and Read both claimed to have invented, and the patent for which was ultimately issued to Read. One of these machines was found to work unsatisfactorily, except at a slow rate of speed; and, after repeated efforts to adjust it and correct it, it was rejected and returned by the purchaser as a failure. The defendant claims that the fact that Hoe & Co. had never, before the suit, manufactured any machines under the Read patent, and that one of these which the defendant manufactured and sold, before the decision upon the interference, proved unsuccessful, establishes that a machine made strictly in conformity with the Read patent could not be made practically successful. But a machine has been made by the complainants since the beginning of the suit, which, although it was not constructed strictly in conformity with the Read patent, appears to have substantially conformed to it. This machine has done satisfactory work at a high rate of speed; and the fact that no evidence is produced in reference to the working of 12 of the 13 machines made in substantial conformity with the Read patent, and sold by the defendant, is suggestive. The defendant must know to whom the machines were sold, and must have been able to ascertain whether they worked satisfactorily. If they had worked unsatisfactorily, the defendant would presumably have offered proof of it, and I think that the fact that no evidence has been given by the defendant in respect to the operation of those machines raises a presumption that they accomplished satisfactorily the purpose for which they were bought. The fact that no machine has ever been made and shown to work successfully under a patent does not prevent the owner of the patent, if it is valid, from restraining an infringement of it. (Bement v. National Harrow Co., 186 U. S. 70, 90, 22 Sup. Ct. 747, 46 L. Ed. 1058); but the fact that no machine has ever been made in exact conformity with either the Read patent or the Miehle patent of 1890 explains the difficulty of determining as an actual fact whether a machine made under either patent would be practically operative. I think, however, upon the whole, that the proof warrants the inference that a machine made under the Read patent would operate successfully. I think, however, that the substantial invention involved in the Read patent is the mounting of the rim of the two-part wheel directly upon the body of the wheel. The defendant claims that, if the term "mounted on" does

not necessarily mean "supported by," the Read patent involves no invention over the Miehle patent of 1890, because in the Miehle patent of 1890 the rim was mounted on the main body of the crank head, which corresponds in that patent to the hub of the wheel in the Read patent, although not supported by it. But, in my opinion, the idea of mounting the rim directly upon the main body of the wheel, instead of attaching it to a sleeve over the main body of the wheel and having it carried simultaneously with the main body of the wheel by means of splines or a rectangular hub, was novel, and was patentable.

The complainant claims that in several minor respects the Read patent has certain other incidental advantages over any prior machine. It is claimed that the rim of the wheel having no work to do during the reversing operation is free from the friction ordinarily incidental to the reversing operation; that in the Read patent, the rim being the only part of the wheel to be moved longitudinally, the mass to be shifted is reduced to a minimum; that the fact that the distance of the reversing crank pin from the shaft journal is shorter in the Read patent causes greater rigidity in the reversing mechanism; that the overhang or distance from the crank pin to the shaft journal is less under the Read patent than the Miehle patent, causing greater stability of parts; and that, in the Miehle patent, owing to the presence of the sleeve within the shaft journal, the sleeve and gear may be liable to the pinch and friction of the shaft against the journal seat during reversal. All these claims seem to me to be, to a greater or less extent, valid. It is claimed that the main body of the wheel and the main shaft remain undisturbed longitudinally in their bearings during the shifting movement, but this also seems to me to be equally true in the Miehle patent. Upon the whole, however, in my opinion, there are various points in respect to which a machine made under the Read patent would be superior to any previously constructed. The entire result was a distinct and substantial improvement, and I think that the patent issued for it was valid.

But it seems to me obvious that the Read patent is not to be regarded as a pioneer patent, to be construed broadly, so as to cover every device for accomplishing the same result, but is to be confined substantially to the specific steps in advance invented and described in the patent. The ordinary meaning of one thing being mounted upon another is that it is directly supported by the other. There is nothing in the drawings or the specifications or the claims of the Read patent which points to any different or more enlarged claim. The patentee, at the end of his description of the construction of the machine, says:

"I am aware that the moving of a bed-driving wheel laterally, so as to engage alternately with racks placed in different vertical planes, is not new; but making the wheel in two parts, the central or body portion of which may remain fixedly secured to the shaft and carry the crank pin, 9, while the rim only has a lateral movement, is an essentially novel construction."

I think that this statement shows that the patentee had no idea of claiming that his invention covered a rim mounted on and supported by a sleeve covering the body of the wheel. In Miehle's application, between which and Read's application the interference was declared,

Miehle expressly asserts that his present invention is an improvement on the construction shown in his patent of 1890, and says, in substance, that the improvement consists in mounting the gear upon the hub instead of securing it directly to the shaft. Read must have become familiar with that statement in Miehle's application, and with the Miehle patent of 1890, during the interference contest, and it must be presumed that he intended to claim as his invention something essentially different from the idea embodied in the Miehle patent of 1890. At all events, if Read meant to claim a patent for a rim mounted on a hub but not supported by it, he was bound to state his claim in his patent so clearly that every one skilled in the art could not fail to see it and read it there. I think that he intended not to make such a claim. At all events, he did not.

It is a fundamental rule that a patentee is required to point out in his claim the exact nature of his invention, so that the public can clearly know what he claims, and can avoid infringement. Rev. St. U. S. § 4888 [U. S. Comp. St. 1901, p. 3383]. I find nothing in the drawings, specifications, or claims of the Read patent which would justify the broad interpretation claimed for it by the complainants, but I think that the Read patent is valid in respect to the actual invention which is described in it; that is, the use of a two-part wheel, the rim being mounted and movable directly upon the body of the wheel. But if this is the correct construction of the Read patent, I am not able to see that the machines manufactured by the defendant infringe it. In the defendant's machines the rim is solidly supported upon the frame of the machine, somewhat differently from, though in a manner essentially similar to, the mode of support shown in the Miehle patent of 1890. In both cases the rim receives its support from the sleeve; but in the one case the sleeve revolves with the rim, and in the other the rim revolves on the sleeve. I cannot see, therefore, that the defendant, in constructing and selling its present machines, infringes the Read patent.

It seems to me, in view of the Miehle patent of 1890, that it is impossible to hold that the machines made by the defendant infringe the Read patent, without also holding that the Read patent involves no invention, unless the invention is confined to the minor advantages previously referred to. The fact appears to be that both the Read machine and the defendant's present machine have some advantages over the Miehle patent of 1890. I have already alluded to several points in respect to which the Read patent seems superior. Some improvements in arrangement shown by the Read patent are also substantially accomplished in the defendant's present machines, particularly the small amount of overhang and of mass to be shifted. But, in my opinion, there is nothing in these improvements in the arrangement of parts which is patentable, except as combined with the main idea of the invention with which they are used, either that of Read, in mounting the rim on the hub of the wheel, or of Miehle, in mounting the rim on a sleeve over the hub. There is one point particularly in respect to which the present Miehle construction seems to be superior

to any preceding machine, including Read's. In the present Miehle machines, the rim being supported upon the sleeve, the friction of rest in shifting the rim from one rack to the other, at the end of the backward and forward motion of the bed, does not have to be overcome, as explained in the evidence of Mr. Wiles and as illustrated on the argument. The rim of the wheel being in rotation on the sleeve when the longitudinal shifting is necessary, the element of friction of rest is absent; and apparently, for this reason, the wheel may be moved longitudinally, when in rotation upon the sleeve, much more easily than it can be when entirely at rest.

My conclusion is that the Read patent is valid, but that the defendant has not infringed the patent, and that therefore the bill should be dismissed, with costs.